# **EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIOAMBER, INC.,[1] | Case No. 18-11078 (LSS) |
| Debtor. | |

**DEBTOR'S MOTION FOR ORDER UNDER SECTIONS 105, 345, 363, 364, 503, 1107 AND 1108 OF THE BANKRUPTCY CODE AUTHORIZING (I) MAINTENANCE OF EXISTING BANK ACCOUNTS; (II) CONTINUANCE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, CHECKS AND RELATED FORMS; (III) CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; (IV) LIMITED WAIVER OF SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS AND (V) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") hereby files this motion (the "Motion") for entry of an order, pursuant to 11 U.S.C. §§ 105, 345, 364, 363, 503, 1107 and 1108, authorizing: the (i) maintenance of existing bank accounts, including the authority to pay routine prepetition banking fees owed to financial institutions; (ii) continued use of the Debtor's existing cash management system, bank accounts, and checks (the "Cash Management System"); (iii) continued performance of intercompany transactions ("Intercompany Transactions"); (iv) limited waiver of section 345(b) deposit and investment requirements to the extent applicable; and (v) granting related relief. In support of the Motion, the Debtor respectfully represents as follows:

**Jurisdiction and Venue**

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

---

[1] The last four digits of the Debtor's federal tax ID number are (1045). The Debtor's service address is: 1000 Westgate Drive, Suite 115, Saint Paul, MN 55114.


Date 5/22/18
Docket # 6

*Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

      2.    The statutory bases for the relief sought in this Motion are sections 105, 345, 363, 364, 503, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"); rules 6003, 6004 and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Local Rule 9013-1(f). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

      3.    On May 4, 2018 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtor's chapter 11 case.

      4.    BioAmber Inc. is a sustainable chemicals company. Its proprietary technology platform combines industrial biotechnology and chemical catalysis to convert

DOCS_SF:96819.2 09588/001

renewable feedstock into chemicals for use in a wide variety of everyday products including plastics, resins, food additives and personal care products.

5.     Formed in October 2008, BioAmber operates the largest bio-succinic acid asset in the world.  Its customers utilize its product as a cost-competitive, sustainable alternative to petroleum-based specialty chemicals in polymers, food additives and flavorings, bath salts, polyurethanes, pharmaceutical and other applications. BioAmber's ability to supply large scale quantities of bio-succinic acid at a competitive price is intended to enable its customers to develop new applications and initiate commercialization of their products.

6.     BioAmber has significantly expanded its business since its inception in 2008 and has grown to eighty-five full-time employees as of December 31, 2017. Of these employees, thirteen were engaged in research and development and engineering, four were engaged in sales and marketing, seventeen were engaged in general and administrative activities and fifty-one were engaged in operational activities.  Sixty-seven employees are based in Canada, fifteen are based in the United States and the remaining three employees are located in Europe.

**Canadian Subsidiaries**

7.     BioAmber currently conducts business in several countries, including the United States, Europe and Canada.  The Debtor's business is primarily conducted through it's wholly owned Canadian subsidiaries, BioAmber Canada Inc. ("BioAmber Canada") and BioAmber Sarnia Inc. ("BioAmber Sarnia" and, together with BioAmber Canada, the "Canadian Subsidiaries").

3

8.      Contemporaneously with the Debtor's bankruptcy filing on the Petition

Date, the Canadian Subsidiaries filed notices of intention to make a proposal to their creditors

under Part III of the Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3 (the "BIA Proceeding")

in the district of Montreal.

9.      The Canadian Subsidiaries intend to commence proceedings under

Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended (the

"CCAA Proceeding") in the next seven to ten days.  The Debtor anticipates that it will be the

court-appointed monitor and authorized foreign representative ("Foreign Representative") in the

CCA Proceeding.  The Foreign Representative will likely file a petition (the "Chapter 15

Petition") seeking recognition of the CCAA Proceeding as a foreign main proceeding and seek

dismissal of the Debtor's chapter 11 case because it represents the most efficient, expeditious,

and appropriate vehicle for administering the Debtor's limited assets in the United States.

10.     In the interim period prior to the initiation of the CCAA Proceeding and

filing of the Chapter 15 Petition, the Debtor seeks the relief requested herein on an interim basis

to allow the Debtors to maintain its Bank Accounts as debtor-in-possession accounts.  In turn,

the Debtor will be able to maintain operations post-petition in the ordinary course of business,

including, but not limited to, the payment of post-petition employee wages for the period ending

May 24, 2018.

### Relief Requested

11.     By this Motion, the Debtor seeks (a) authority to (i) maintain its existing

bank accounts and to pay any prepetition routine banking fees, if any, imposed by the financial

4

institutions where the Debtor's bank accounts are maintained and to continue to use its existing

business forms and check stock; (ii) continue to use its existing Cash Management System, as

provided herein; (iii) continue to perform intercompany transactions; (iv) obtain a limited waiver

of the requirements pursuant to section 345(b) of the Bankruptcy Code to the extent required;

and (b) the related relief set forth herein.

### Debtor's Cash Management System and Bank Accounts

12.    The Debtor's Cash Management System facilitates the timely and efficient

collection, management, and disbursement of funds used in the Debtor's business.  The Cash

Management System currently consists of two bank accounts located at HSBC Bank USA NA

("HSBC"), as reflected on **Exhibit A** hereto (collectively, the "Bank Accounts").

13.    As more fully explained below, the Cash Management System is designed

to effectuate the collection of revenue from public issuance of securities, pay operating expenses,

and maintain payroll obligations.  Any disruption caused by requiring the Debtor to close its

existing bank accounts, open new bank accounts and establish a new cash management system

would jeopardize the Debtor's ability to satisfy post-petition obligations and maintain their

relationships with customers.  Specifically, the Debtor's ability to meet post-petition payroll

obligations would be delayed.

### B.    Overview of the Cash Management System

14.    The Debtor's cash management system is used to fund its operating

activities and those of the Canadian Subsidiaries.  The Debtor's cash is generated via public

equity issuances.

5

C.    **The Operating Account**

       15.    The Debtor maintains one operating account, which is an important part of the Debtor's cash management system, and if this account was closed the Debtor's ability to meet post-peition payroll obligations would be unnecessarily delayed and the administrative burdens on the Debtor's chief financial officer and his staff would be increased with no offsetting benefit to the Debtor.

D.    **The Savings Account**

       16.    The Debtor maintains a savings account for the purpose of earning interest on excess cash balances.

**The Court Should Authorize the
Debtor to Maintain Existing Bank Accounts**

       17.    The United States Trustee for the District of Delaware has established certain operating guidelines for debtors in possession.  One such provision requires chapter 11 debtors in possession to close all existing bank accounts and open new bank accounts.  The guidelines also require that debtors maintain new bank accounts in certain financial institutions designated as authorized depositories by the United States Trustee.  This requirement, designed to provide a clear line of demarcation between prepetition and post-petition claims and payments, helps protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

       18.    The Debtor seeks a waiver of the United States Trustee's requirement for the closure of the Bank Accounts and opening of new post-petition bank accounts at depositories authorized by the United States Trustee.  If strictly enforced in this case, the requirement to close

6

and open new accounts would cause a severe disruption in the Debtor's activities and would

impair the Debtor's ability to operate under chapter 11.  Maintenance of the Bank Accounts and

the Cash Management System will greatly facilitate the Debtor's operations in chapter 11.  The

continued maintenance of the Bank Accounts is of paramount importance because the accounts

are used to collect revenues and effectuate payments to employees and vendors.

19.     The Debtor's Bank Accounts are maintained by financial institutions *(i.e.,*

HSBC) that are on the United States Trustee's approved depository list for the District of

Delaware.  If the Bank Accounts were closed, the Debtor would have to open new accounts and

then attempt to arrange alternative electronic and manual payment procedures for payments into

and out of the Debtor's accounts, which would disrupt the flow of post-petition receipts and

disbursements.  In addition, closing the Bank Accounts would require the Debtor to cancel and

reinstitute wire transfer instructions which would be difficult to modify under exigent

circumstances.  This disruption would severely impact and could irreparably harm the Debtor's

ability to operate at this critical juncture.  The Debtor should be permitted to maintain its existing

Bank Accounts and, if necessary, open new accounts as debtor-in-possession accounts, and/or

close any unneeded existing Bank Accounts.

20.     To guard against improper transfers resulting from the post-petition

honoring of prepetition checks, the Debtor previously notified HSBC not to honor checks drawn

on the Debtor's accounts before the Petition Date, except upon limited Court-approved

exceptions.  Subject to a prohibition against honoring prepetition checks or offsets without

specific authorization from this Court, the Debtor requests that it be authorized to maintain and

continue the use of its Bank Accounts in the same manner and with the same account numbers,

styles, and document forms as those employed prepetition.

21.    If the relief requested herein is granted, the Debtor will not pay, and

HSBC will be required not to pay, any debts incurred before the Petition Date, other than as

specifically authorized through this Motion or otherwise ordered by the Court.

### The Court Should Authorize the Debtor to Continue Its Existing Cash Management System

22.    The Debtor hereby seeks authority to continue to use its Cash

Management System as such system may be modified by the Debtor.  For the reasons set forth

above, the Cash Management System constitutes an essential business practice and was created

and implemented by the management of the Debtor in the exercise of their business judgment.

The Cash Management System provides numerous benefits including the ability to (a) receive

funds raised through the issuance of public securities; (b) allow a mechanism for deposits; (c)

pay employee wages and benefits; and (d) pay vendors.  In addition, preserving a "business as

usual" atmosphere and avoiding the unnecessary distractions that would inevitably be associated

with a substantial disruption of the Cash Management System, including the ability to meet post-

petition payroll obligations.  Moreover, the Debtor submits that the relief requested is consistent

with the relief provided to debtors in a number of other cases pending in this district, as

explained below.

DOCS_SF:96819.2 09588/001

### The Court Should Authorize the Payment of Outstanding Routine
### Prepetition Expenses Relating to the Operation of the Cash Management System

23.     In the ordinary course of the operation and maintenance of the Cash

Management System, the Debtor incurs routine bank charges and fees relating to the

administration of the Cash Management System.  While it is difficult to readily determine the

aggregate amount of unpaid prepetition banking fees as of the Petition Date (given, for example,

the applicable banks' varying timing of charging/deducting such fees from a given account), on

average, the Debtor pays approximately $100.00 in monthly banking fees and charges.  The

Debtor seeks authority, in its discretion, to pay any such routine and ordinary course prepetition

banking fees and charges owed to any affected bank and to continue the post-petition payment of

such fees and charges in the ordinary course of business.

### The Debtor Should Be Allowed to Continue Certain Intercompany
### Transactions and Preserve Intercompany Setoff Rights

24.     The Debtor utilizes the Cash Management System for certain

intercompany transactions (the "Intercompany Transactions") with the Canadian Subsidiaries

that allow the Debtor, among other things, to meet payroll obligations of the Debtor's employees

and the needs of customers and suppliers.  For the purposes of the interim relief sought herein,

the Debtor only seeks approval of Intercompany Transactions related to payroll obligations for

the period ending May 24, 2018.  The Debtor believes that the continuation of the Intercompany

9

Transactions is beneficial to its estate, its creditors and other parties in interest and, therefore, should be authorized by the Court.[2]

25.    To ensure the Debtor will not, at the expense of its creditors, fund the operations of another entity, the Debtor respectfully requests that, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all intercompany claims between and among the Debtor and any of the Canadian Subsidiaries arising after the Petition Date as a result of Intercompany Transactions (collectively, "Intercompany Claims"), be accorded administrative priority expense status.  If Intercompany Claims are accorded administrative priority expense status, each entity utilizing funds flowing through the Cash Management System should continue to bear ultimate repayment responsibility for such ordinary course transactions.

26.    The Debtor also seeks authorization to preserve and exercise intercompany setoff rights.  Section 553(a) of the Bankruptcy Code provides that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the Debtors that arose before the commencement of the case under this title against a claim of such creditor against the Debtors that arose before the commencement of the case . . . .

11 U.S.C. § 553(a).  A creditor need only establish two elements before a setoff may be asserted: mutuality and timing.  *Official Comm.  of Unsecured Creditors v. Mfrs.  & Traders Trust Co. (In re The Bennett Funding Group, Inc.)*, 212 B.R.  206, 212 (2d Cir. B.A.P. 1997); *see also In re Verco Industries*, 704 F.2d 1134, 1139 (9th Cir. 1983); *In re Lundell Farms*, 86 B.R.  582, 584

---

[2] The Debtor engaged in Intercompany Transactions on a regular basis prior to the Petition Date.  Such transactions are common for enterprises such as the Debtor.  The Debtor believes that these transactions are in the ordinary course within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval.  Nevertheless, out of an abundance of caution, the Debtor is seeking express authority to engage in such transactions.

(Bankr. W.D. Wis. 1988). Although courts have not uniformly defined the elements of

mutuality, most courts require the following elements: that the debts be (i) owed between the

same parties and (ii) in the same right or capacity. *See 5 Collier on Bankruptcy* ¶ 553.03[3][a] at

553-28-29 (15th rev. ed. 2004) (citing *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533,

1537 (10th Cir. 1990); *Lubman v. Sovran Bank, N.A. (In re A & B Homes, Ltd.)*, 98 B.R. 243,

248 (Bankr. E.D. Va. 1989); *see also Cohen v. Savs. Bldg. & Loan Co. (In re Bevill, Bresler &*

*Schulman Asset Mgmt. Corp.)*, 896 F.2d 54, 57 (3d Cir. 1990) (explaining that the right of setoff

depends on the existence of mutual debts and claims between the creditor and debtor). Timing

requires that both claims arose prepetition. *See Cooper Jarrett, Inc. v. Cent. Transp., Inc.*, 726

F.2d 93, 96 (3d Cir. 1984) (noting that a creditor may not [setoff] its prepetition claims against a

debt owed to a Debtors which came into existence after filing the bankruptcy petition); *see also*

*In re Sentinel Prods.Corp.*, 192 B.R. 41, 45 (S.D.N.Y. 1996) ("Section 553(a) of the bankruptcy

code preserves a creditor's right to set off . . . between the Debtors and creditor as long as both

debts arose before the commencement of the [bankruptcy] case"); *In re Westchester Structures*,

181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995) (same); Arnold M. Quittner, *Setoff and Recoupment*,

715 PLI/Comm 633, 661 (1995) (same).[3] As a result, "a creditor may not set off a prepetition

claim against a post-petition debt it owes the debtor, and likewise it may not set off a post-

petition claim that it has against a pre-petition debt it owes to a debtor." *In re Metco Mining and*

---

[3] In addition, courts have allowed parties to offset claims post-petition in the same manner as a prepetition setoff, as long as the mutuality requirements are met. *See, e.g., United States v. Gordon Sel Way, Inc. (In re Gordon Sel-Way, Inc.)*, 239 B.R 741, 751 (E.D. Mich. 1999), *aff'd*, 270 F.3d 280 (6th Cir. 2001); *In re Mohawk Indus., Inc.*, 82 B.R. 174, 179 (Bankr. D. Mass. 1987).

*Minerals, Inc.*, 171 B.R. 210 (Bankr. W.D. Pa. 1994); *see also In re Westchester Structures*, 181 B.R. at 739.

27.     The Cash Management System and other processes allow the Debtor to track all obligations owing between related entities and thereby ensure that all setoffs of Intercompany Transactions will meet both the mutuality and timing requirements of section 553 of the Bankruptcy Code. The Debtor seeks, on an interim basis, the authority to meet any Intercompany Transactions related to post-petition payroll, and on a final basis, the authority to continue Intercompany Transactions in the ordinary course of business. The Debtor also respectfully requests, therefore, that the Debtor expressly be authorized, to set off obligations arising on account of Intercompany Transactions between the Debtor and its non-debtor affiliates, including, but not limited to the Canadian Subsidiaries. For the avoidance of doubt, the Debtor is not seeking authority by this Motion to satisfy prepetition claims arising out of Intercompany Transactions by offsetting such prepetition Intercompany Transactions against post-petition Intercompany Transactions.

### The Court Should Grant a Limited Waiver<br>Pursuant to Section 345(b) of the Bankruptcy Code

28.     The Debtor seeks a waiver of section 345(b) of the Bankruptcy Code to the extent required. The waiver would permit the Debtor to maintain the Bank Accounts without posting a bond or other security, as would otherwise be required under section 345(b) whenever the funds on deposit exceed the amount permitted under section 345(b). As explained above, all of the Bank Accounts are maintained at the Banks, which are federally insured institutions.

**Authority for the Requested Relief**

A.     **The Continued Use of the Debtor's Routine Cash Management System and Bank Accounts Is Essential and Approval to Maintain the Status Quo Is Routinely Granted Under Bankruptcy Code Sections 363 and 105**

29.     Bankruptcy courts routinely grant chapter 11 debtors authority to continue utilizing existing cash management systems, and treat requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). This is particularly true where, as here, the chapter 11 case involves affiliated entities with complex financial affairs. In *In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtors and forty-three (43) of their subsidiaries "to continue to consolidate the management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors." *Id.* at 620. The Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtors to utilize their prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

30.     Likewise, in another context, the bankruptcy court in the *Columbia Gas* chapter 11 case explained that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticability of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied*

13

*sub nom Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 114 S.

Ct. 1050 (1994). The Third Circuit agreed, emphasizing that a requirement to maintain all

accounts separately "would be a huge administrative burden and economically inefficient."

*Columbia Gas*, 997 F.2d at 1061. *See also In re Southmark Corp.*, 49 F.3d 111, 114 (5th Cir.

1995) (cash management system allows debtors "to administer more efficiently and effectively

their financial operations and assets"); *In re UNR Indus., Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill.

1984).

      31.     Section 363(c)(1) of the Bankruptcy Code authorizes the debtors in

possession to "use property of the estate in the ordinary course of business without notice or a

hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to

provide a debtors in possession with the flexibility to engage in the ordinary transactions

required to operate their business without undue oversight by creditors or the court. *Medical*

*Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997). Included

within the purview of section 363(c) is a debtors' ability to continue the "routine transactions"

necessitated by a debtors' cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp.*

*(In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtor seeks

authority under section 363(c)(1) of the Bankruptcy Code to continue the collection and

disbursement of cash pursuant to its existing Cash Management System. Additionally the Court

may exercise their equitable powers to grant the relief requested herein. Section 105(a) of the

Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary

to carry out the provisions of this title." 11 U.S.C. § 105(a).  Continuing the Debtor's Cash

Management System without interruption is vital to the success of its chapter 11 case.

   32. In other cases in the District of Delaware, this Court has granted relief

substantially similar to that requested in this Motion. *See, e.g., In re Aquion Energy, Inc.,* Case

No. 17-10500 (KJC) (Bankr. D. Del. March 10, 2017); *In re Basic Energy Services, Inc., et al.,*

Case No.  16-12320 (KJC) (Bankr. D. Del. October 26, 2016); *In re Key Energy Services, Inc., et*

*al.,* Case 16-12306 (BLS) (Bankr. D. Del. October 25, 2016); *In re Malibu Lighting*

*Corporation, et al.,* Case No. 15-12082 (KG) (Bankr. D. Del. Oct. 9, 2015); *In re Caché, Inc.,*

Case No. 15-10172 (MFW) (Bankr. D. Del. Feb. 5, 2015); *In re Deb Stores Holding LLC,* Case

No. 14-12676 (KG) (Bankr. D. Del. Dec. 5, 2014); *In re Ultura (LA) INC., et al.,* Case No. 14-

12382 (KH) (Bankr. D. Del. Oct. 23, 2014); *In re Ablest, Inc.,* Case No. 14-10717 (KJC) (Bankr.

D. Del. Apr. 2, 2014); *In re AES Eastern Energy, L.P.,* Case No. 11-14138 (KJC) (Bankr. D.

Del. Jan. 26, 2012); *In re William Lyon Homes,* Case No. 11-14019 (CSS) (Bankr. D. Del. Dec.

20, 2011); *In re Affiliated Media, Inc.,* Case No. 10-10202 (KJC) (Bankr. D. Del Jan. 26, 2010);

*In re Point Blank Solutions, Inc., et al.,* Case No. 10-11255 (PJW) (Bankr. D. Del. Apr. 16,

2010).  Accordingly, the Debtor requests that the Court approve the continued use of the

Debtor's Cash Management System and Bank Accounts.

**B.** **The Debtor's Bank Accounts Are In**
  **Compliance With Section 345(b) of the Bankruptcy Code**

   33. Section 345(a) authorizes deposits or investments of money "as will yield

the maximum reasonable net return on such money, taking into account the safety of such

deposit or investment."  Section 345(b) provides:

Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested --

1)    a bond --

    A.    in favor of the United States;

    B.    secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

    C.    conditioned on --

        i)    a proper accounting of all money so deposited or invested and for any return on such money;

        ii)    prompt repayment of such money and return; and

        iii)    faithful performance of duties as a depository; or

2)    the deposit of securities of the kind specified in section 9303 of title 31 unless the court for cause orders otherwise.

34.    As noted above, the two accounts are with banks that have been approved as a depository for funds of debtors in possession by the United States Trustee for Region 3. Therefore, the Debtor's Bank Accounts are in compliance with the security or bonding requirements prescribed by section 345(b) of the Bankruptcy Code and no security or bonds are necessary to secure the funds in such accounts.

## C.    The Court Should Grant the Debtor Authority to Use Existing Checks and Related Forms

35.    To minimize expense to its estate, the Debtor requests authority to continue using its respective existing pre-printed check stock, deposit slips, and related forms without reference to their "debtor in possession" status until the existing stock has been

16

exhausted, provided that the Debtor shall add the "debtor in possession" designation to any new checks ordered after the depletion of the existing stock. The Debtor's business forms are primarily electronically generated, but certain forms used by the Debtor's accounts payable department are preprinted. Parties doing business with the Debtor undoubtedly will be aware, as a result of the notice that will be sent of the filing of the Debtor's chapter 11 case and the publicity of the filing, of the Debtor's status as a chapter 11 debtor in possession. For this reason, the Debtor requests that it be authorized to use existing checks and deposit slips without placing the label "debtor in possession" on each such form until such a time as its existing stocks are depleted. In addition, the Debtor requests a reasonable amount of time to alter their software to provide for the insertion of "debtor in possession" on post-petition purchase orders and invoices, which the Debtor estimates may take up to three weeks to implement.

36.     Similar relief has been granted in this district. *See, e.g., In re Aquion Energy, Inc.,* Case No. 17-10500 (KJC) (Bankr. D. Del. March 10, 2017); *In re Malibu Lighting Corporation, et al.,* Case No. 15-12082 (KG) (Bankr. D. Del. Oct. 9, 2015); *In re Muzak Holdings LLC,* No. 09-10422 (KJC) (Bankr. D. Del. Feb. 12, 2009); *In re Portola Packaging, Inc.,* No. 08-12001 (CSS) (Bankr. D. Del. Aug. 29, 2008); *In re Hines Horticulture, Inc.,* No. 08-11922 (KJC) (Bankr. D. Del. Aug. 22, 2008); *In re Pierre Foods, Inc.,* No. 08-11480 (KG) (Bankr. D. Del. July 16, 2008); *In re ACG Holdings, Inc.,* No. 08-11467 (CSS) (Bankr. D. Del. July 16, 2008); *In re Tropicana Entm't, LLC,* No. 08-10856 (KJC) (Bankr. D. Del. May 6, 2008); *In re Leiner Health Prods., Inc.,* No. 08-10446 (KJC) (Bankr. D. Del. Mar. 12, 2008); *In re Wickes Holdings, LLC,* No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008).

DOCS_SF:96819.2 09588/001

### Waiver of Bankruptcy Rules 6003 and 6004

37.    Pursuant to Bankruptcy Rule 6003(b), "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b).  For the reasons described more fully above, and to the extent that the relief requested herein implicates Bankruptcy Rule 6003(b), the Debtor submits that the requirements of Bankruptcy Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

38.    Finally, to implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

### Notice

39.    The Debtor will provide notice of this Motion to the following parties, or their counsel, if known:  (a) the Office of the United States Trustee; (b) the Debtor's twenty largest unsecured creditors; (c) HSBC; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

40.    No prior motion for the relief requested herein has been made to this or any other Court.

18

WHEREFORE, the Debtor respectfully requests that the Court enter the Order substantially in the form attached hereto (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated: May 22, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*

Laura Davis Jones (DE Bar 2436)
Jeremy Richards (CA Bar No. 102300)
Colin R. Robinson (DE Bar No. 5524)
919 N. Market Street, 17th Floor
Wilmington, DE 19899 (Courier 19801)
Tel:  (302) 652-4100
Fax: (302) 652-4400
E-mail:      ljones@pszjlaw.com
             jrichards@pszjlaw.com
             crobinson@pszjlaw.com

Proposed Attorneys for Debtor and Debtor in Possession

**EXHIBIT A**

| Bank Name | Account Number | Type of Account |
|---|---|---|
| HSBC Bank USA NA | xxxxx6596 | Checking |
| HSBC Bank USA NA | xxxxx0688 | Savings |

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIOAMBER, INC.,[1] | Case No. 18-11078 (LSS) |
| Debtor. | |

**INTERIM ORDER UNDER SECTIONS 105, 345, 363, 364, 503, 1107 AND 1108
OF THE BANKRUPTCY CODE AUTHORIZING (I) MAINTENANCE
OF EXISTING BANK ACCOUNTS; (II) CONTINUANCE OF EXISTING
CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, CHECKS AND
RELATED FORMS; (III) CONTINUED PERFORMANCE OF INTERCOMPANY
TRANSACTIONS; (IV) LIMITED WAIVER OF SECTION 345(b) DEPOSIT
AND INVESTMENT REQUIREMENTS AND (V) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] filed by the debtor and debtor

in possession (the "Debtor") in the above-captioned chapter 11 case seeking entry of an Order

under sections 105, 345, 363, 1107 and 1108 of title 11 of the United States Code (the

"Bankruptcy Code") authorizing: the (i) maintenance of existing bank accounts including the

authority to pay routine prepetition banking fees owed to financial institutions; (ii) continued use

of the Debtor's existing cash management system, bank accounts, checks and related forms for

the Debtor; (iii) continued performance of intercompany transactions; (iv) a limited waiver under

Bankruptcy Code section 345(b) to the extent necessary; and (v) granting related relief; and it

appearing that the relief requested is in the best interests of the Debtor's estate, its creditors and

other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant

to 28 U.S.C. §§ 157 and 1334; and it appearing that this matter is a core proceeding pursuant to

---

[1] The last four digits of the Debtor's federal tax ID number are (1045). The Debtor's service address is: 1000 Westgate Drive, Suite 115, Saint Paul, MN 55114.

[2] Unless otherwise noted, capitalized terms used herein shall have the meanings ascribed to them in the Motion.

28 U.S.C.  § 157(b)(2)(A), (M) and (O); and due and adequate notice of the Motion having been

given under the circumstances; and after due deliberation and cause appearing therefor; it is

hereby ORDERED THAT

      1.     The Motion is GRANTED as set forth herein.

      2.     The Debtor is authorized, but not directed, in the reasonable exercise of its

business judgment, (i) to designate, maintain and continue to use, with the same account

numbers, all of the bank accounts in existence on the Petition Date, including, without limitation,

those accounts identified on **Exhibit A** to the Motion (the "Bank Accounts"); (ii) treat the Bank

Accounts for all purposes as debtor in possession accounts; (iii) use all existing paper check

stock and related forms without reference to the Debtor's status as "debtor in possession" until

such supply is depleted, after which the Debtor will order new check stock, deposit slips and

related forms with the "debtor in possession" reference; and (iv) are afforded a reasonable time

to arrange for the labeling of "debtor in possession" on purchase orders and invoices issued post-

petition, as requested in the Motion.

      3.     The bank set forth on **Exhibit A** to the Motion and any other bank (each, a

"Bank" and collectively, the "Banks") at which any Bank Account is or may be maintained are

hereby authorized to continue to service and administer such Bank Account as an account of the

Debtor as a debtor in possession bank account without interruption and in the usual and ordinary

course of business, and to receive, process, honor and pay any and all checks and drafts drawn on

the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be;

*provided*, *however*, that any check that the Debtor advises any Bank to have been drawn or

2

issued by the Debtor before the Petition Date may be honored by any Bank only if specifically authorized by order of this Court.

4.    Except as modified by this Order, the Debtor's existing banking agreements with the Banks with respect to the Bank Accounts and with respect to the transfers to and from the Bank Accounts shall continue to govern the post-petition cash management relationship between the Debtor and each of the Banks.

5.    The Debtor and each of the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts with notice from the Debtor to the United States Trustee, which accounts shall similarly be subject to this Order.

6.    In the course of providing cash management services to the Debtor, each Bank is authorized, without further order of this Court, to continue to deduct from the appropriate accounts of the Debtor, the Bank's routine and ordinary course fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtor.

7.    With respect to all checks that have not been honored prior to the Petition Date (the "Prepetition Checks"), the Debtor shall, no later than the close of business on the fifth (5th) business day following entry of this Order, (a) place a stop payment on all such unauthorized Prepetition Checks to be dishonored in accordance with the applicable Bank's stop payment procedures (the "Voided Prepetition Checks"); and (b) send the Banks an electronic file containing specific data for each applicable Voided Prepetition Check, together with a written

3

representation that a stop payment has been placed on all applicable Voided Prepetition Checks (the "Stop Payment Representation"). All unauthorized Prepetition Checks that are not Voided Prepetition Checks will be Prepetition Checks for which the Debtor has Court approval to pay and want the Banks to honor, and the Banks shall promptly honor each such Prepetition Check after receipt of the Stop Payment Representation from the Debtor. A Bank's reasonable reliance on the Stop Payment Representation in connection with its honoring or dishonoring of a Prepetition Check, as the case may be, shall not constitute a violation of this Order.

8. Each Bank that maintains a disbursement account of the Debtor shall implement reasonable handling procedures designed to effectuate the terms of this Order, and no Bank that implements such handling procedures and then honors a prepetition check or other item drawn on any account that is the subject of this Order either (i) at the direction of the Debtor to honor such prepetition check or item, (ii) in good faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite implementation of such handling procedures, shall be deemed in violation of this Order.

9. The Debtor shall maintain detailed records reflecting all transfers of funds (including any Intercompany Transactions) under the terms and conditions provided for by the existing agreements with the institutions participating in the Debtor's Cash Management System. In connection with the ongoing utilization of their Cash Management System, the Debtor shall continue to maintain records in the ordinary course of business with respect to all transfers so that all transactions (including any Intercompany Transactions) may be readily ascertained,

4

traced and recorded properly on the applicable accounts and distinguished between prepetition and post-petition transactions.

          10.    The Debtor is authorized to open any new Bank Accounts or close any existing Bank Accounts as they may, in its discretion, deem necessary and appropriate; *provided, however*, that the Debtor gives notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware and any statutory committees appointed in this chapter 11 case; *provided, further, however*, that the Debtor shall open any such new Bank Account at a bank that has (i) executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at a bank that is willing to immediately execute such an agreement; *provided, further*, that any such new Bank Account shall be subject to the terms of this Order.

          11.    For banks at which the Debtor holds bank accounts that are party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order the Debtor shall (a) contact each bank, (b) provide the bank with the Debtor's employer identification numbers and (c) identify each of its bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

          12.    The Debtor is authorized to continue utilizing its Cash Management System to manage the Debtor's cash, in a manner consistent with the Debtor's prepetition practices and this Order.

DOCS_SF:96819.2 09588/001

13.     The Debtor is authorized to continue to consummate the Intercompany Transactions related to payroll obligations through the period from the Petition Date through and including May 24, 2018, with other non-debtor affiliates, and to create Intercompany Claims.

14.     The Debtor is authorized to deposit funds, in excess of amounts insured by the Federal Depository Insurance Corporation so long as such funds are deposited in a Bank Account with a bank that has a Uniform Depository Agreement with the Office of the United States Trustee.

15.     Each of the Debtor's Banks is authorized to debit the Bank Accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Bank Accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Bank Accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

16.     Any of the Debtor's Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

6

17.     Except as otherwise set forth in this Order:  (i) those certain existing deposit agreements between the Debtor and the Banks shall continue to govern the postpetition cash management relationship between the Debtor and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, and (ii) either the Debtor or the Banks may, without further Order of this Court, implement changes to the cash management systems and procedures in the ordinary course of business pursuant to terms of those certain existing deposit agreements, including, without limitation, the opening and closing of bank accounts, *provided, however*, that any such changes to the existing cash management systems and procedures shall be subject to the terms of this Order.

18.     The Debtor shall cause a copy of this Order to be served on each Bank at which a Bank Account is maintained within five (5) business days of the entry of this Order.

19.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

20.     The Bank Accounts comply with the requirements imposed under section 345(b) of the Bankruptcy Code.  The requirements of Bankruptcy Code section 345(b) are deemed satisfied.

21.     The notice requirements under Bankruptcy Rule 6004(a) and the stay under Bankruptcy Rule 6004(h) are hereby waived, to the extent that it applies.

22.     A final hearing on the Motion shall be held on June ___, 2018 at _____. Any objections or responses to entry of a final order on the Motion shall be filed on or before

4:00 p.m. prevailing Eastern Time on _____, 2018, and shall be served on: which objections

shall be served so as to be actually received on or before such date on: (a) proposed counsel for

the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor,

Wilmington, DE 19801, Attn: Jeremy Richards, Esq. (jrichards@pszjlaw.com) and Colin R.

Robinson (crobinson@pszjlaw.com); and (b) the U.S. Trustee, 844 King Street, Suite 2207,

Wilmington, DE 19801, Attn:  Benjamin Hackman

        23.     This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.


Dated: _____, 2018

                                          _____

                                          HONORABLE LAURIE SELBER SILVERSTEIN
                                          UNITED STATES BANKRUPTCY JUDGE

DOCS_SF:96819.2 09588/001