# EXHIBIT A

## CCAA Initial Order

# SUPERIOR COURT
(Commercial Division)

CANADA
PROVINCE OF QUEBEC
DISTRICT OF MONTREAL

N°:      500-11-054564-188

DATE:     May 24, 2018

---

**PRESIDING: THE HONOURABLE MICHEL A. PINSONNAULT, J.S.C.**

---

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED:

**BIOAMBER CANADA INC.**

**BIOAMBER SARNIA INC.**

**BIOAMBER INC.**

    Petitioners

-and-

**PRICEWATERHOUSECOOPERS INC.**

    Monitor

---

## ORDER

---

[1]     **THE COURT**, upon reading the Petitioners' *Motion for (I) the Continuance of Proceedings Commenced under Part III of the Bankruptcy Act, (II) the Issuance of an Initial Order under the Companies' Creditors Arrangement Act, and (III) Ancillary Relief* pursuant to the *Companies' Creditors Arrangement Act* ("**CCAA**"), having examined the proceeding, the affidavits and the exhibits;

[2]     **GIVEN** the representations by counsel for the Petitioners;

[3]     **GIVEN** the provisions of the CCAA;

JP1736



500-11-054564-188 Page: 2

**FOR THESE REASONS, THE COURT HEREBY:**

[4]  **GRANTS** the present Petitioners' *Motion for (I) the Continuance of Proceedings Commenced under Part III of the Bankruptcy and Insolvency Act, (II) the Issuance of an Initial Order under the Companies' Creditors Arrangement Act, and (III) Ancillary Relief* pursuant to the CCAA;

[5]  **ISSUES** and order pursuant to the CCAA (the "**Order**"), divided under the following headings:

   a)  Service;

   b)  Application of the CCAA, Continuation of the BIA Proceedings under the CCAA and Procedural Consolidation;

   c)  Effective Time;

   d)  Plan of Arrangement;

   e)  Stay of Proceedings against the Petitioners and the Property;

   f)  Stay of Proceedings against the Directors and Officers;

   g)  Possession of Property and Operations;

   h)  No Exercise of Rights or Remedies;

   i)  No Interference with Rights;

   j)  Continuation of Services;

   k)  Non-Derogation of Rights;

   l)  Directors' and Officers' Indemnification and Charge;

   m)  Restructuring;

   n)  SISP;

   o)  Powers of the Monitor;

   p)  Priorities and General Provisions Relating to CCAA Charges;

   q)  General.



500-11-054564-188                                                                                              Page: 3

## A. Service

[6] **ORDERS** that any prior delay for the presentation of the Petition is hereby abridged and validated so that the Petition is properly returnable today and hereby dispenses with further service thereof.

[7] **DECLARES** that sufficient prior notice of the presentation of the Petition has been given by the Petitioners to interested parties, including the secured creditors who are likely to be affected by the charges created herein.

## B. Application of the CCAA, Continuation of BIA Proceedings under the CCAA and Procedural Consolidation

[8] **DECLARES** that the Petitioners are debtor companies to which the CCAA applies.

[9] **ORDERS** that the proceedings commenced by Petitioner BioAmber Canada Inc. and the Petitioner BioAmber Sarnia Inc. pursuant to the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3 (the "**BIA**") in court files 500-11-054564-188 and 500-11-054563-180, respectively, be continued under the CCAA in the present court file.

[10] **ORDERS** that the consolidation of these CCAA proceedings in respect of the Petitioners shall be for administrative purposes only and shall not effect a consolidation of the assets and property of each of the Petitioners including, without limitation, for the purposes of any Plan or Plans that may be hereafter proposed.

## C. Effective Time

[11] **DECLARES** that this Order and all of its provisions are effective as of 12:01 a.m. Montreal time, province of Quebec, on the date of this Order (the "**Effective Time**").

## D. Plan of Arrangement

[12] **DECLARES** that the Petitioners shall have the authority to file with this Court and to submit to its creditors one or more plans of compromise or arrangement (collectively, the "**Plan**") in accordance with the CCAA.

## E. Stay of Proceedings against the Petitioners and the Property

[13] **ORDERS** that, until and including June 22, 2018, or such later date as the Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the Petitioners, or affecting the Petitioners' business

500-11-054564-188                                                                                                   Page: 4

operations and activities (the "**Business**") or the Property (as defined herein), including as provided in paragraph [22] herein except with leave of this Court. Any and all Proceedings currently under way against or in respect of the Petitioners or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to subsection 11.1 CCAA.

[13].1 **ORDERS** that the rights of Her Majesty in right of Canada and Her Majesty in right of a Province are suspended in accordance with the terms and conditions of subsection 11.09 CCAA.

**F.     Stay of Proceedings against Directors and Officers**

[14]    **ORDERS** that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Petitioners nor against any person deemed to be a director or an officer of any of the Petitioners under subsection 11.03(3) CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Petitioners where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation.

**G.     Possession of Property and Operations**

[15]    **ORDERS** that the Petitioners shall remain in possession and control of their present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof (collectively the "**Property**"), the whole in accordance with the terms and conditions of this order including, but not limited, to paragraph [32] hereof.

[16]    **ORDERS** that each of the Petitioners are authorized to complete outstanding transactions and engage in new transactions with other Petitioners, and to continue, on and after the date of this Order, to buy and sell goods and services, and allocate, collect and pay costs, expenses and other amounts from and to the other Petitioners, or any of them (collectively, the "**Intercompany Transactions**") in the ordinary course of business. All ordinary course Intercompany Transactions among the Petitioners shall continue on terms consistent with existing arrangements or past practice, subject to such changes thereto, or to such governing principles, policies or procedures as the Monitor may require, or subject to further Order of this Court. Without limiting the generality of the foregoing, the Petitioner BioAmber Inc. is hereby permitted to pay amounts becoming due to the Petitioner BioAmber Canada Inc. on and after May 4, 2018 for services provided by BioAmber Canada Inc. pursuant to the Management Services Agreement filed in support of the Motion as Exhibit R-8.



[17]  **ORDERS** that, without limiting the generality of paragraph [16] hereof, for the purpose of meeting their respective post-filing obligations provided for pursuant to the Cash Flow Forecast filed in support of the Motion as Exhibit R-12 or making any other payments they are authorized and permitted to make pursuant to the present Order, the Petitioners are permitted (i) to borrow, repay and re-borrow from each other from time to time, by way of intercompany advances pursuant to promissory notes bearing interest at a rate of 5% *per annum* (the "**Post-Filing Intercompany Advances**"), and (ii) to operate set-off of such Post-Filing Intercompany Advances, as applicable, such that the net aggregate outstanding amount of such Post-Filing Intercompany Advances shall not be more than $750,000 (the "**Net Post-Filing Intercompany Advances**").

[18]  **DECLARES** that all of the Property of each of the Petitioners (excluding the sum of $375,000 held in escrow by Boivin Desbiens Senecal LLP to secure the obligations of BioAmber Sarnia Inc. to Arlanxeo Canada Inc. pursuant to a steam supply agreement dated as of May 12, 2012 (as amended) (the "**Arlanxeo Escrowed Funds**")) is hereby subject to charges and security for an aggregate amount of $750,000 in favour of the other Petitioners (the "**Post-Filing Intercompany Advance Charges**") to secure the Net Post-Filing Intercompany Advances owing after the Petitioners have operated set-off of Post-Filing Intercompany Advances amongst themselves. The Post-Filing Intercompany Advance Charges shall have the priority established at paragraphs [48] to [49] of this Order.

[19]  **ORDERS** that the Petitioners shall be entitled but not required to pay the following expenses whether incurred prior to or after this Order:

   a)   all outstanding and future wages, salaries, bonuses, employee and current service pension contributions, expenses, benefits and vacation pay payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

   b)   the fees and disbursements of any agents retained or employed by the Petitioners in respect of these proceedings, at their standard rates and charges; and

   c)   with the consent of the Monitor, amounts owing for goods or services actually supplied to the Petitioners prior to the date of this Order by third party suppliers up to a maximum aggregate amount of $500,000, if, in the opinion of the Petitioners, the supplier is critical to the business and ongoing operations of the Petitioners.

[20]  **ORDERS** that, except as otherwise provided to the contrary herein, the Petitioners  shall be entitled but not required to pay all reasonable expenses



500-11-054564-188                                                                                           Page: 6

      incurred by the Petitioners in carrying on the Business in the ordinary course after this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

      a)    all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business; and

      b)    payment for goods or services actually supplied to the Petitioners following the date of this Order.

[21]  **ORDERS** that the Petitioners shall remit, in accordance with legal requirements, or pay:

      a)    any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Québec Pension Plan, and (iv) income taxes, or, in the case of BioAmber Inc., any similar amounts payable pursuant to applicable United States federal and state law; and

      b)    all goods and services, harmonized sales or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners and in connection with the sale of goods and services by the Petitioners, or, in the case of BioAmber Inc., any similar amounts payable pursuant to applicable United States federal and state law, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order.

**H.**    **No Exercise of Rights of Remedies**

[22]  **ORDERS** that during the Stay Period, and subject to, *inter alia*, subsection 11.1 CCAA, all rights and remedies, including, but not limited to modifications of existing rights and events deemed to occur pursuant to any agreement to which any of the Petitioners is a party as a result of the insolvency of the Petitioners and/or these CCAA proceedings, any events of default or non-performance by the Petitioners or any admissions or evidence in these CCAA proceedings, of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Petitioners, or affecting the Business, the Property or any part thereof are hereby stayed and suspended except with leave of this Court.



500-11-054564-188 Page: 7

[23]  **DECLARES** that, to the extent any rights, obligations, or prescription, time or limitation periods including, without limitation, to file grievances relating to the Petitioners or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period.  Without limitation to the foregoing, in the event that the Petitioners, or any of them, become(s) bankrupt or a receiver as defined in subsection 243(2) of the BIA is appointed in respect of the Petitioners, the period between the date of the Order and the day on which the Stay Period ends shall not be calculated in respect of the Petitioners in determining the 30 day periods referred to in Sections 81.1 and 81.2 of the BIA.

I. **No Interference with Rights**

[24]  **ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Petitioners except with the written consent of the Petitioners, as applicable, and the Monitor, or with leave of this Court.

J. **Continuation of Services**

[25]  **ORDERS** that during the Stay Period and subject to paragraph [27] hereof and subsection 11.01 CCAA, all Persons having verbal or written agreements with the Petitioners or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, utility or other goods or services made available to the Petitioners, are hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Petitioners, and that the Petitioners shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of the Order are paid by the Petitioners, without having to provide any security deposit or any other security, in accordance with normal payment practices of the Petitioners or such other practices as may be agreed upon by the supplier or service provider and the Petitioners, as applicable, with the consent of the Monitor, or as may be ordered by this Court.

[26]  **ORDERS** that, notwithstanding anything else contained herein and subject to subsection 11.01 CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to the Petitioners on or after the date of this Order, nor



500-11-054564-188                                                                                                                Page: 8

shall any Person be under any obligation on or after the date of the Order to make further advance of money or otherwise extend any credit to the Petitioners.

[27]  **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by any Petitioner with any Person during the Stay Period, whether in an operating account or otherwise for itself or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by a Petitioner and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into a Petitioner's account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

**K.    Non-Derogation of Rights**

[28]  **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of the Petitioners shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of the Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

**L.    Directors' and Officers' Indemnification and Charge**

[29]  **ORDERS** that the Petitioners shall indemnify their Directors from all claims relating to any obligations or liabilities they may incur and which have accrued as of May 4, 2018 by reason of or in relation to their respective capacities as directors or officers of the Petitioners after the Effective Time, except where such obligations or liabilities were incurred as a result of such directors' or officers' gross negligence, wilful misconduct or gross or intentional fault as further detailed in Section 11.51 CCAA.

[30]  **ORDERS** that the Directors of the Petitioners shall be entitled to the benefit of and are hereby granted a charge and security in the Property (excluding the Arlanxeo Escrowed Funds) to the extent of the aggregate amount of $500,000 (the "**Directors' Charge**"), as security for the indemnity provided in paragraph [29] of this Order as it relates to obligations and liabilities that the Directors may incur in such capacity after May 4, 2018. The Directors' Charge shall have the priority set out in paragraphs [48] to [49] of this Order.

[31]  **ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the



500-11-054564-188                                                                                           Page: 9

benefit of the Directors' Charge, and (b) the Directors shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the Directors are entitled to be indemnified in accordance with paragraph [29] of this Order.

**M.   Restructuring**

[32]   **DECLARES** that, to facilitate the orderly restructuring of their business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, the Petitioners shall have the right, subject to approval of the Monitor or further order of the Court, to:

   a)   permanently or temporarily cease, downsize or shut down any of their operations or locations as they deem appropriate and make provision for the consequences thereof in the Plan;

   b)   pursue all avenues to finance or refinance, market, convey, transfer, assign or in any other manner dispose of the Business or Property, in whole or part, subject to further order of the Court and sections 11.3 and 36 CCAA, and under reserve of subparagraph (c);

   c)   subject to prior written consent from Comerica Bank acting in its capacity as agent for the Senior Secured Lenders (as defined in the Motion), Her Majesty the Queen in Right of Ontario as represented by the Minister of Economic Development and Growth and BDC Capital Inc., convey, transfer, assign, lease, or in any other manner dispose of the Property, outside of the ordinary course of business, in whole or in part, and that the price and value in each case does not exceed $200,000 or $2,000,000 in the aggregate;

   d)   terminate the employment of such of their employees or temporarily or permanently lay off such of their employees as they deem appropriate and, to the extent any amounts in lieu of notice, termination or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Petitioners, as applicable, and such employee, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the Petitioners may determine;

   e)   subject to the provisions of section 32 CCAA, disclaim or resiliate, any of their agreements, contracts or arrangements of any nature whatsoever, with such disclaimers or resiliation to be on such terms as may be agreed between the Petitioners, as applicable, and the relevant party, or failing such agreement, to make provision for the consequences thereof in the Plan; and



500-11-054564-188 Page: 10

    f)    subject to section 11.3 CCAA, assign any rights and obligations of Petitioners.

[33] **DECLARES** that, if a notice of disclaimer or resiliation is given to a landlord of any of a Petitioner pursuant to section 33 of the CCAA and subsection 33(e) of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving such Petitioner and the Monitor 24 hours prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as any such landlord may determine without waiver of, or prejudice to, any claims or rights of the landlord against the Petitioners, provided nothing herein shall relieve such landlord of their obligation to mitigate any damages claimed in connection therewith.

[34] **ORDERS** that the Petitioners, as applicable, shall provide to any relevant landlord notice of the intention of any of the Petitioners to remove any fittings, fixtures, installations or leasehold improvements at least seven (7) days in advance. If a Petitioner has already vacated the leased premises, it shall not be considered to be in occupation of such location pending the resolution of any dispute between such Petitioner and the landlord.

[35] **DECLARES** that, in order to facilitate the Restructuring, the Petitioners may, subject to the approval of the Monitor, or further order of the Court, settle claims of customers and suppliers that are in dispute.

[36] **ORDERS** that all meetings of the shareholders of Petitioners be postponed and extended pending further order of this Court.

[37] **DECLARES** that, pursuant to sub-paragraph 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c.5, the Petitioners are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors, financiers, buyers or strategic partners and to their advisers (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Petitioners or destroyed. In the event that a Third Party acquires personal information as part of



the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioners.

[38]  **ORDERS** that pursuant to clause 3(c)(i) of the *Electronic Commerce Protection Regulations*, made under *An Act to Promote the Efficiency and Adaptability of the Canadian Economy by Regulating Certain Activities that Discourage Reliance on Electronic Means of Carrying Out Commercial Activities, and to Amend the Canadian Radio-television and Telecommunications Commission Act, the Competition Act, the Personal Information Protection and Electronic Documents Act and the Telecommunications Act*, S.C. 2010, c. 23, the Petitioners and the Monitor are authorized and permitted to send, or cause or permit to be sent, commercial electronic messages to an electronic address of prospective purchasers or bidders and to their advisors but only to the extent desirable or required to provide information with respect to any sales process in these CCAA proceedings.

**N.   SISP**

[39]  **APPROVES** the sale and investor solicitation process ("**SISP**") filed in support of the Motion as Exhibit R-4.

[40]  **AUTHORIZES** and **DIRECTS** the Petitioners and the Monitor to take such steps as they consider necessary to desirable in carrying out the SISP in accordance with its terms.

**O.   Powers of the Monitor**

[41]  **ORDERS** that PricewaterhouseCoopers Inc. is hereby appointed to monitor the business and financial affairs of the Petitioners as an officer of this Court (the "**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations, referred to in Section 23 of the CCAA:

   a)   shall, as soon as practicable, (i) publish once a week for two (2) consecutive weeks or as otherwise directed by the Court, in La Presse, the Sarnia Observer, the Globe & Mail National Edition and the Star Tribune (Minnesota) and (ii) within five (5) business days after the date of this Order (A) post on the Monitor's website (the "**Website**") a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against a Petitioner of more than $1,000, advising them that the Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in



500-11-054564-188 Page: 12

      accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

b)     shall monitor the Petitioners' receipts and disbursements;

c)     shall assist the Petitioners, to the extent required by the Petitioners, in dealing with their creditors and other interested Persons during the Stay Period;

d)     shall assist the Petitioners, to the extent required by the Petitioners, with the preparation of their cash flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

e)     shall advise and assist the Petitioners, to the extent required by the Petitioners, to review the Petitioners' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

f)     shall take whatever steps necessary or desirable to carry out the SISP;

g)     shall assist the Petitioners, to the extent required by the Petitioners, with the Restructuring and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

h)     shall report to the Court on the state of the business and financial affairs of the Petitioners or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order and may file consolidated Reports for the Petitioners;

i)     shall report to this Court and interested parties, including but not limited to creditors affected by the Plan, with respect to the Monitor's assessment of, and recommendations with respect to, the Plan;

j)     may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of this Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

k)     may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of their powers or the discharge of their obligations in these proceedings and any related proceeding, under this Order or under the CCAA;



500-11-054564-188                                                                                                              Page: 13

    l)    may act as a "foreign representative" of any of the Petitioners or in any other similar capacity in any insolvency, bankruptcy or reorganisation proceedings outside of Canada;

    m)    may give any consent or approval as may be contemplated by this Order or the CCAA;

    n)    may hold and administer funds in connection with arrangements made among the Petitioners, any counter-parties and the Monitor, or by Order of this Court; and

    o)    may perform such other duties as are required by this Order or the CCAA or by this Court from time to time.

Unless expressly authorized to do so by this Court, the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Petitioners, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Petitioners.

[42]    **ORDERS** that the Petitioners and their Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of the Order shall forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Petitioners in connection with the Monitor's duties and responsibilities hereunder.

[43]    **DECLARES** that the Monitor may provide creditors and other relevant stakeholders of the Petitioners with information in response to requests made by them in writing addressed to the Monitor and copied to the Petitioners' counsel. In the case of information that the Monitor has been advised by the Petitioners is confidential, proprietary or competitive, the Monitor shall not provide such information to any Person without the consent of the Petitioners unless otherwise directed by this Court.

[44]    **DECLARES** that if the Monitor, in its capacity as Monitor, carries on the business of the Petitioners or continues the employment of the Petitioners' employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA.

[45]    **DECLARES** that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out of the provisions of any order of this Court, except with prior leave of this Court, on at least seven days' notice to the Monitor and its counsel. The entities related to or affiliated with the Monitor referred to in subparagraph [41]j) hereof shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.



500-11-054564-188 Page: 14

[46] **ORDERS** that the Petitioners shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the Petitioners' legal counsel and other advisers, directly related to these proceedings, the Plan and the Restructuring, whether incurred before or after this Order.

[47] **DECLARES** that the Monitor, the Monitor's legal counsel (Borden Ladner Gervais LLP), the Petitioners' legal counsel (Blake, Cassels & Graydon LLP as insolvency counsel and DSL, LLP as general counsel), the Monitor's and the Petitioners' respective advisers, as security for the professional fees and disbursements incurred both before and after the making of this Order and directly related to these proceedings, the Plan and the Restructuring, be entitled to the benefit of and are hereby granted a charge and security in the Property (excluding the Arlanxeo Escrowed Funds), to the extent of the aggregate amount of $300,000 (the "**Administration Charge**"), having the priority established by paragraphs [48] to [49] of this Order.

**P.** **Priorities and General Provisions Relating to CCAA Charges**

[48] **DECLARES** that the priorities of the Administration Charge and the Directors' Charge (collectively, the "**CCAA Charges**"), as between them with respect to any Property to which they apply, shall be as follows:

    a)     first, the Administration Charge;

    b)     second, the Post-Filing Intercompany Advance Charges; and

    c)     third, the Directors' Charge.

[49] **DECLARES** that each of the CCAA Charges shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property whether or not charged by such Encumbrances.

[50] **ORDERS** that, except as otherwise expressly provided for herein, the Petitioners shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges unless the Petitioners, as applicable, obtain the prior written consent of the Monitor and the prior approval of the Court.

[51] **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Petitioners, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.



[52] **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of the CCAA Charges, as applicable, shall be valid and enforceable and not otherwise be limited or impaired in any way by (i) these proceedings and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such applications or any assignments in bankruptcy made or deemed to be made in respect of any Petitioner; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any agreement, lease, sub-lease or other arrangement which binds the Petitioners (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

   a) the creation of any of the CCAA Charges shall not create nor be deemed to constitute a breach by the Petitioners of any Third Party Agreement to which any Petitioner is a party; and

   b) the beneficiaries of the CCAA Charges shall not have any liability to any Person whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

[53] **DECLARES** that notwithstanding: (i) these proceedings and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such applications or any assignments in bankruptcy made or deemed to be made in respect of any Petitioner, and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by any Petitioner pursuant to this Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

[54] **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the Petitioners and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver of the Petitioners.

**Q.   General**

[55] **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel or financial advisers of the Petitioners or of the Monitor in relation to the Business or Property of the Petitioners, without first obtaining leave of this Court, upon five (5) calendar days' written notice to the Petitioners' counsel, the Monitor's counsel, and to all those referred to in this paragraph whom it is proposed be named in such Proceedings.



500-11-054564-188 Page: 16

[56]  **ORDERS** that, subject to further Order of this Court, all motions in these CCAA proceedings are to be brought on not less than five (5) calendar days' notice to all Persons on the service list. Each Motion shall specify a date (the "**Initial Return Date**") and time (the "**Initial Return Time**") for the hearing.

[57]  **ORDERS** that any Person wishing to object to the relief sought on a motion in these CCAA proceedings must serve responding motion materials or a notice stating the objection to the motion and the grounds for such objection (a "**Notice of Objection**") in writing to the moving party, the Petitioners and the Monitor, with a copy to all Persons on the service list, no later than 5 p.m. Montreal Time on the date that is three (3) calendar days prior to the Initial Return Date (the "**Objection Deadline**").

[58]  **ORDERS** that, if no Notice of Objection is served by the Objection Deadline, the Judge having carriage of the motion (the "**Presiding Judge**") may determine: (a) whether a hearing is necessary; (b) whether such hearing will be in person, by telephone or by written submissions only; and (c) the parties from whom submissions are required (collectively, the "**Hearing Details**"). In the absence of any such determination, a hearing will be held in the ordinary course.

[59]  **ORDERS** that, if no Notice of Objection is served by the Objection Deadline, the Monitor shall communicate with the Presiding Judge regarding whether a determination has been made by the Presiding Judge concerning the Hearing Details. The Monitor shall thereafter advise the service list of the Hearing Details and the Monitor shall report upon its dissemination of the Hearing Details to the Court in a timely manner, which may be contained in the Monitor's next report in these proceedings.

[60]  **ORDERS** that, if a Notice of Objection is served by the Objection Deadline, the interested parties shall appear before the Presiding Judge on the Initial Return Date at the Initial Return Time, or such earlier or later time as may be directed by the Court, to, as the Court may direct: (a) proceed with the hearing on the Initial Return Date and at the Initial Return Time; or (b) establish a schedule for the delivery of materials and the hearing of the contested motion and such other matters, including interim relief, as the Court may direct.

[61]  **DECLARES** that this Order and any proceeding or affidavit leading to the Order, shall not, in and of themselves, constitute a default or failure to comply by the Petitioners under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

[62]  **DECLARES** that, except as otherwise specified herein, the Petitioners and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to



Persons or other appropriate parties at their respective given addresses as last shown on the records of the Petitioners and that any such service shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three business days after mailing if by ordinary mail.

[63] **DECLARES** that the Petitioners and any party to these proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that the Petitioners shall deliver "hard copies" of such materials upon request to any party as soon as practicable thereafter.

[64] **ORDERS** that the summary of the DIP financing solicitation process, produced under seal of confidentiality as Exhibit and R-14 to the Petition, shall be sealed, kept confidential and not form part of the public record, but rather shall be placed, separate and apart from all other contents of the Court file, in a sealed envelope attached to a notice that sets out the title of these proceedings and a statement that the contents are subject to a sealing order and shall only be opened upon further Order of the Court.

[65] **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on the solicitors for the Petitioners and the Monitor and has filed such notice with this Court, or appears on the service list prepared by the Monitor, the Petitioner or their respective attorneys, save and except when an order is sought against a Person not previously involved in these proceedings.

[66] **DECLARES** that the Petitioners or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of the Order on notice only to each other.

[67] **DECLARES** that the Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada.

[68] **AUTHORIZES** the Monitor or any of the Petitioners, and in the case of the Monitor, with the prior consent of the Petitioners, to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement this Order and any subsequent orders of this Court and, without limitation to the foregoing, any orders under chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101-1532, including an order for recognition of these CCAA proceedings as "Foreign Main Proceedings" in the United States of America (the "**Chapter 15 Relief**"), and for which the Monitor or any of the



Petitioners shall be the foreign representative of the Petitioners (in such capacity, the "**Foreign Representative**"). All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Monitor and the Petitioners as may be deemed necessary or appropriate for that purpose.

[69]   **REQUESTS** the aid and recognition of any Court, tribunal, regulatory or administrative body in any Province of Canada and any Canadian federal court or in the United States of America and any court or administrative body elsewhere, to give effect to this Order and to assist the Petitioners, the Monitor and their respective agents in carrying out the terms of this Order. All Courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and the Monitor as may be necessary or desirable to give effect to this Order, including by recognizing the present CCAA proceedings as "Foreign Main Proceedings" for the purpose of the Chapter 15 Relief, to grant representative status to the Foreign Representative in any foreign proceeding, to assist the Petitioners and the Monitor, and to act in aid of and to be complementary to this Court, in carrying out the terms of this Order.

[70]   **DECLARES** that, for the purposes of the Chapter 15 Relief and/or any applications authorized by paragraphs [68] and [69], Petitioners' centre of main interest is located in the province of Québec, Canada.

[71]   **ORDERS** the provisional execution of the Order notwithstanding any appeal.

_[signature]_ j.s.c.

The Honourable Michel A. Pinsonnault, J.S.C.

Mtre. Bernard Boucher
Mtre. Sébastien Guy
*Blake, Cassels & Graydon LLP*
Attorney for Petitioners

Copie certifiée conforme
au document détenu par la cour

2 4 MAI 2018

(signature du greffier-adjoint)

Date of hearing: May 24, 2018

David Antonio Vergara
GREFFIER ADJOINT C.S.M.