UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | . Chapter 11 |
|  | . |
|  | . Case No. 18-11078(LSS) |
| BIOAMBER, INC., | . |
|  | . |
| Debtor. | . |

. . . . . . . . . . . . . . . . . .

|  |  |
|---|---|
| IN RE: | . Chapter 15 |
|  | . |
| BIOAMBER, INC., | . Case No. 18-11291(LSS) |
|  | . |
| Debtor in a Foreign Proceeding. | . Courtroom 2 |
|  | . 824 Market Street |
|  | . Wilmington, Delaware 19801 |
|  | . |

. . . . . . . . . . . . . . . .  . Wednesday, June 20, 2018

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:            Colin R. Robinson, Esq.
                           PACHULSKI, STANG, ZIEHL
                            & JONES, LLP
                           919 North Market Street
                           17th Floor
                           Wilmington, Delaware 19899

For the U.S. Trustee:      Benjamin Hackman, Esq.
                           OFFICE OF THE U.S. TRUSTEE
                           844 North King Street
                           Wilmington, Delaware 19801


(Appearances Continued)

Audio Operator:            Electronically Recorded
                           by Michael Miller, ECRO

Transcription Company:     Reliable
                           1007 N. Orange Street
                           Wilmington, Delaware 19801
                           (302)654-8080
                           Email:  gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:   (Continued)

For Comerica Bank:               David T. Queroli, Esq.
                                 RICHARDS, LAYTON & FINGER, PA
                                 One Rodney Square
                                 920 North King Street
                                 Wilmington, Delaware 19801

<u>INDEX</u>

                                                            <u>Page</u>

<u>RECOGNITION OF FOREIGN MAIN PROCEEDING</u>                       4

<u>CASH MANAGEMENT</u>                                             11

<u>MOTION TO DISMISS CHAPTER 11 PROCEEDING</u>                    15




<u>EXHIBIT</u>                                        <u>IDENT.</u>   <u>EVID.</u>

Settino Declaration                                          7

1          (Proceedings commence at 2:01 p.m.)

2               THE COURT:  Please be seated.

3               Mr. Robinson.

4               MR. ROBINSON:  Good afternoon, Your Honor.  Colin

5     Robinson, Pachulski, Stang, Ziehl & Jones, on behalf of the

6     debtor and foreign representative.  With me today in the

7     courtroom, Your Honor, is Mr. Mario Settino; he's the Chief

8     Financial Officer of the debtor and the foreign

9     representative.  And also, Mr. Settino, as Your Honor is

10    aware, is the first-day declarant for the Chapter 15 foreign

11    recognition proceeding.

12              THE COURT:  Yes.  And I've read that declaration.

13              MR. ROBINSON:  Yes, Your Honor.  And apologies for

14    it not being in a binder originally sent over, and hopefully

15    you had enough time to review it --

16              THE COURT:  I did.

17              MR. ROBINSON:  -- this morning.

18              Your Honor, if you'll allow me, I'm going to go

19    slightly out of order of the agenda and actually start with

20    recognition of the foreign main proceeding, which is Item

21    Number 2.

22              THE COURT:  That's fine.

23              MR. ROBINSON:  Okay.  Your Honor, as Your Honor is

24    aware, we filed a motion for foreign recognition of the CCAA

25    proceeding commenced by BioAmber, Inc., its related

1    subsidiaries Sarnia and BioAmber Canada, which are both

2    located up in Canada.  That was commenced on May 24th, 2018.

3    A copy of that CCAA initial interim order is attached to Mr.

4    Settino's declaration, in case you have any questions about

5    that.

6           Your Honor, as you're aware, as I've kind of

7    briefly overviewed, essentially, this is a sustainable

8    chemicals company that produces a succinic acid that is used

9    in plastics, spandex, multiple products.  It's based on a

10   chemical produced by Cargill that's licensed to the debtor

11   and then used for production of the sustainable chemicals.

12          Your Honor, it's a -- as you probably read in Mr.

13   Settino's first-day declaration in the Chapter 15, it's a

14   startup company, and they have historically operated at

15   losses.  They've raised money through equity financing and

16   hit some liquidity issues earlier this year, de-listed from

17   the stock exchanges in New York and Toronto, and essentially

18   needed to enter into the CCAA proceedings and the chapter --

19   originally, the Chapter 11 also, in order to start a

20   reorganization process.

21          What they're looking to do through the CCAA

22   proceeding -- "they," being the debtors -- are to enter into

23   a sale process, which is in process right now, and hopefully

24   find a buyer for the company.  That sale process is underway.

25   The time line for that is mentioned in the proceedings.

1      But essentially, one date did change, Your Honor,

2  which I wanted to point out for you, which is the June 20th

3  date, for indications -- submissions of indications of

4  interest is actually now June 29.

5      THE COURT:  Okay.

6      MR. ROBINSON:  So there would have been none

7  received today; that moves to June 29.

8      And then deadlines for diligence is July 20; and

9  then, hopefully, execution of successful bid transactions

10  brought by July 31.

11      I can just tell Your Honor, there are -- as we

12  would see in any Chapter 11 sale process here -- about 20

13  people in the pipeline.  And hopefully, from those 20

14  interested parties, they hope to get 2 or 3 viable offers.

15      Your Honor, we're looking for -- to have some DIP

16  financing in place in Canada.  That will allow the company --

17  the company's operations at Sarnia -- which is really where

18  everything happens -- to get back up and running.  And we

19  think that's a necessary part of the sale process there in

20  Canada.

21      So, Your Honor, unless you have any questions about

22  the background and where we are and where the case is going,

23  where we're heading today is recognition of the foreign main

24  proceeding, of the CCAA proceeding.

25      Your Honor, we filed a memorandum of law, I'm happy

1    to walk through the criteria.  There was no objection to the

2    requested relief; the standard, so to speak, in -- but we

3    think it's a foreign main proceedings.  There are operations

4    there in Canada.  We filed an appropriate petition.

5         And before I forget, Your Honor, if there's no

6    objection, I would like to move Mr. Settino's declaration

7    into evidence in support of the motion for foreign

8    recognition.

9         THE COURT:  Yes.  Are there any objections?

10        MR. HACKMAN:  No objection, Your Honor.

11        THE COURT:  Thank you.  It's admitted without

12   objection.

13      (Settino Declaration received in evidence)

14        THE COURT:  And as I said before, I have reviewed

15   it and will rely on it in connection with this hearing.

16        MR. ROBINSON:  So, as I said, Your Honor, just

17   jumping back, the debtor is a foreign representative.  The

18   foreign representative filed this case, consistent with

19   Chapter 15.  And we believe the recognition of the Chapter 15

20   is appropriate and, again, it's subject to no objection at

21   this time.

22        And Your Honor, as you probably saw in the form of

23   order -- which I can hand up a clean at your convenience --

24   you know, we're just seeking the protections you normally

25   would see under Chapter 15:  Extension of 362, 365, not

1    looking for anything out of the ordinary in our recognition

2    order.

3              THE COURT:  I only had one question about the

4    recognition order.

5              MR. ROBINSON:  Sure.

6              THE COURT:  And I didn't have a chance to go back,

7    quite frankly, and look at other ones that I've entered.  But

8    Paragraph 6.

9              MR. ROBINSON:  Yes.

10             THE COURT:  It says that I am granting -- I'll

11   grant comity --

12             MR. ROBINSON:  Uh-huh.

13             THE COURT:  -- and I'll recognize the CCA initial

14   order, the CCA proceeding, generally.

15             MR. ROBINSON:  Uh-huh.

16             THE COURT:  But then it says:

17             "-- and the transactions consummated or to be

18             consummated thereunder."

19        So is it not contemplated that, for example, the

20   sale order -- the sale would be here, or that I would be

21   recognizing the specific sale order once it's entered by the

22   Canadian Court?

23             MR. ROBINSON:  We would contemplate that, so we

24   might have gotten a little ahead of ourselves on that

25   language, Your Honor.

1          THE COURT:  Okay.

2          MR. ROBINSON:  And happy to -- though we --

3    thought, admittedly, I started with another case that -- I'm

4    not sure how we kept that in there, so it may have just been

5    a holdover from what I had done in a prior case and not

6    applicable here because I think, in the other case I had done

7    it, we -- everything was happening all at once, and we didn't

8    have a sale transaction.

9          THE COURT:  Okay.

10          MR. ROBINSON:  It was being consummated down the

11    road.

12          So I think what we could do, Your Honor, is I could

13    just strike that "future," and we would obviously have to

14    come back for approval, and anything approved in the Canadian

15    proceeding would come back to you.  And obviously, I think

16    that would be the sale.

17          THE COURT:  Okay.  That's the only question that I

18    had --

19          MR. ROBINSON:  Okay.  Yep.

20          THE COURT:  -- about the sale order --

21          MR. ROBINSON:  Sure.

22          THE COURT:  -- the recognition order --

23          MR. ROBINSON:  Right.

24          THE COURT:  -- itself.

25          MR. ROBINSON:  Okay.  Your Honor, if I may, with

1  your permission -- I'm just looking at -- trying -- I would

2  just strike, after the first "and the transactions

3  consummated," "or to be consummated thereunder," and just --

4          THE COURT:  Yes.

5          MR. ROBINSON:  And then, if I may approach with

6  that --

7          THE COURT:  Yes.

8          MR. ROBINSON:  -- struck -- okay.

9      (Pause in proceedings)

10          THE COURT:  Thank you.

11          Does anyone wish to be heard with respect to the

12  recognition order?

13      (No verbal response)

14          THE COURT:  Okay.  I hear no one.

15          I've reviewed the declaration of Mr. Settino, as

16  well as the requests that have been made by the foreign

17  representative, and I find that the foreign representative

18  is, in fact, a foreign representative entitled to seek this

19  type of relief, and that the relief requested meets the

20  requisites under Chapter 15, particularly based on the

21  Settino declaration.

22          I will find that the CCAA proceedings are "foreign

23  main proceedings," as that term is used in Chapter 15.  And I

24  will recognize the proceedings, as well as the initial order

25  that the Canadian Court has entered in the case.  And I will

1    sign the form of order with the one change that was just

2    discussed on the record.

3              MR. ROBINSON:  Thank you, Your Honor.

4              THE COURT:  Okay.  That order is signed.

5              MR. ROBINSON:  Thank you, Your Honor.

6              So, Your Honor, with that in place and the

7    applicable 362/365, I will now turn to our pending Chapter 11

8    proceeding, which, as Your Honor is aware from our prior

9    hearings, kind of preceded the 15 because there were --

10   frankly, just some timing issues, and we needed the 15 in

11   place until the CCAA proceeding was fully up and running.

12             So, Your Honor, before I jump to -- which I believe

13   is Agenda 1, I'm actually going to jump to Agenda 3 because

14   we just need to close the loop on our interim cash management

15   motion that we had.

16             THE COURT:  Okay.

17             MR. ROBINSON:  And so what we did there, Your

18   Honor, as you'll recall, is, working with HSBC Bank and the

19   U.S. Trustee, we sought interim cash management relief on an

20   expedited basis; Your Honor was gracious enough to grant it.

21   We had worked out a form of order then with HSBC, which

22   included their comments.

23             I've circulated the revised final order to them.

24   I'm not aware of any objection from HSBC.  I don't see them

25   in court today, unless they're on the line.  And Your Honor,

1    I -- if I can, I can approach with a blackline and the clean

2    and just walk you through, literally, the one change in that

3    order.

4                THE COURT:  Yes --

5                MR. ROBINSON:  Okay.

6                THE COURT:  -- you may approach.

7        (Participants confer)

8                THE COURT:  Thank you.

9                MR. ROBINSON:  Your Honor, and I believe, if you

10   flip to the blackline, it's just Paragraph 11.  We're just --

11   the interim order -- cash management, at that point, upon

12   agreement with the Court and with HSBC, we were just trying

13   to get one payroll through the HSBC bank account, post-

14   petition payroll.  And so we just deleted the language that

15   was just limiting the intercompany transactions to that one

16   transaction in our interim order, so now we're back to the

17   full intercompany transactions.

18               That being said, it's somewhat of a moot point

19   because we're going to be dismissing the 11.

20               THE COURT:  Well, that's what I was asking.  So

21   what's the purpose of entering the final order other than we

22   had an interim one?

23               MR. ROBINSON:  It was just because we had an

24   interim and no final, and I thought the record -- we thought

25   the record should be complete, in terms of a final order

1   because the interim, it just said we could only do one thing,

2   which we did, which was pay payroll.  And for purposes of the

3   11, we just wanted to make sure that there was a full and

4   complete record that we -- because we -- and we also noticed

5   it out, Your Honor, that there was going to be a final order,

6   so I thought we should come and have a final order entered

7   before we dismissed the case because we gave an opportunity

8   to object to it.

9           THE COURT:  Will this order have any effect --

10          MR. ROBINSON:  Well, our dismissal --

11          THE COURT:  -- once the case is dismissed?

12          MR. ROBINSON:  Only to the extent that our Chapter

13  11 that our dismissal order says that orders entered prior to

14  dismissal remain in effect, so it's -- but it -- but

15  everything that will happen with the Chapter 11 Debtor will

16  happen through the Canadian Court at this point, and subject

17  to the CCAA initial order and any subsequent orders that are

18  approved.

19          THE COURT:  Okay.  So the Canadian Justice will

20  also have an opportunity, to the extent that it's appropriate

21  in Canada to do so, to weigh in on the cash management

22  system.

23          MR. ROBINSON:  Correct.  And I -- and frankly, Your

24  Honor, I believe the Canadian Court -- and I'll double-check

25  with Mr. Settino, if you allow me one minute.  But I believe

1    the Canadian Court already has authorized intercompany

2    transactions up to an amount of ...

3         (Participants confer)

4              MR. ROBINSON:  Up to $750,000.  So they were

5    already authorized.  So this was actually -- this final order

6    was actually kind of catching up to that because they were

7    already authorized in the CCAA initial order.

8              THE COURT:  Okay.  I just don't want to do

9    something that's inconsistent with what the justice up in

10   Canada is doing.

11             MR. ROBINSON:  And nor do we, Your Honor.  We're

12   not trying to be inconsistent at all.  I mean, I'm happy -- I

13   believe everything is -- has to be done consistent with that

14   order, at this point, once the 11 is dismissed, because we're

15   subject to the jurisdiction of the Canadians, so ...

16             THE COURT:  Uh-huh.

17             MR. ROBINSON:  I don't think the debtor can do

18   anything with its cash management, with that final order,

19   one, because the 11 is going to be dismissed, but more

20   importably because we're now operating under the jurisdiction

21   of the Canadian Court.

22             THE COURT:  Okay.  Okay.  Does anyone wish to be

23   heard with respect to the final cash management order?

24             MR. ROBINSON:  And Your Honor, just for clarity of

25   the record, the language that HSBC requested in the interim

1   order --

2           THE COURT:  Uh-huh.

3           MR. ROBINSON:  -- carried through to the final

4   order --

5           THE COURT:  Okay.

6           MR. ROBINSON:  -- which was also one of the reasons

7   why I just wanted to make sure HSBC was comfortable and that

8   the language that they had requested for their own

9   protections were still there in the final, which it is.

10          THE COURT:  Okay.  Well, I am signing the order

11  with the understandings that have been discussed with the

12  colloquy we've just had.

13          MR. ROBINSON:  Thank you, Your Honor.

14          Your Honor, that brings us to our final agenda

15  matter, which is Matter Number 1, which is the motion of the

16  foreign representative to dismiss the Chapter 11 proceeding.

17          Your Honor, so we filed this relief under Section

18  305, and we think it's pretty straightforward.  There was no

19  objection.  But reading straight from the statute, the Court

20  provides -- the Court provides that:

21              "A court may, after notice and a hearing, dismiss

22              or suspend a chapter" -- "after" -- "a bankruptcy

23              case if a Chapter 15 petition has been granted and

24              the purposes of Chapter 15 of this title would be

25              best served by such a dismissal or suspension."

1          And we think that's clear here, in this instance.

2    We have a CCA proceeding in Canada, up and running, initial

3    order entered there; a sale process ongoing.  We think it

4    makes sense to dismiss the 11 at this point, pursuant to

5    Section 305(a) of the Bankruptcy Code.  And really, it's as

6    straightforward of that, Your Honor.  I'm not aware of any

7    comments or questions on it.

8          Your Honor, one note for the record I discussed

9    with the U.S. Trustee.  We will still be filing our monthly

10   operating report, so that the proper calculations can be made

11   for the fees that are needed to be paid for the time that the

12   debtor was in Chapter 11.

13          THE COURT:  Okay.

14          MR. ROBINSON:  So we will still get that on file by

15   the end of the month because that is the end of the quarter,

16   so we can avoid any further charges.

17          THE COURT:  Okay.

18          MR. ROBINSON:  And I told Mr. Hackman we'd make

19   that clear on the record.  And I've discussed that, actually

20   prior to the hearing, with Mr. Settino.

21          THE COURT:  Okay.  Does anyone wish to be heard?

22   Mr. Hackman.

23          MR. HACKMAN:  Yes.  Good afternoon, Your Honor.

24   May it please the Court, Ben Hackman for the U.S. Trustee.

25          I wanted to follow up just briefly on a comment I

1    had made at the previous hearing in the case.  We had

2    received shareholder letters about the appointment of an

3    official equity committee in the case.  We have determined

4    not to appoint one at this time, and we have followed up with

5    those shareholders to advise them of that decision.  I don't

6    think it necessarily plays into the relief being requested,

7    but I wanted to make Your Honor aware of it.

8              We don't object to the dismissal of the Chapter 11

9    case.  Thank you, Your Honor.

10             THE COURT:  Okay.  So you received a request in the

11   Chapter 11 case --

12             MR. HACKMAN:  Yes, Your Honor.

13             THE COURT:  -- for an equity committee.

14             MR. HACKMAN:  I believe there were seven

15   shareholders who sent us correspondence, asking us to

16   appoint.  We reached out to the debtor and they provided us

17   with a response.

18             THE COURT:  Okay.

19             MR. HACKMAN:  And we did our evaluation and

20   determined not to appoint.

21             THE COURT:  Okay.  Thank you.

22             MR. HACKMAN:  Thank you.

23             THE COURT:  Okay.  Does anyone else wish to be

24   heard with respect to the motion to dismiss the Chapter 11

25   case?

1    (No verbal response)

2           THE COURT:  Okay.  I hear no one.

3           I've reviewed it and I think it is consistent with

4    Section 305 and the basis for dismissing a case under -- I

5    guess it's (a)(2)(A) and (B), and since I have granted the

6    petition under Section 1515 for recognition and I also do

7    find it's in the best interest therefor for the dismissal.

8           There have been no objections.  No party has

9    suggested a reason why this case should not be dismissed,

10   unless Ms. Richenderfer is here for a particular reason ...

11          MS. RICHENDERFER:  No, Your Honor.  I'm here to

12   observe.

13          THE COURT:  Ah, okay.

14          Then let me just look at the form of order.

15          MR. ROBINSON:  Your Honor, may I approach?  I have

16   a clean copy --

17          THE COURT:  Yes.

18          MR. ROBINSON:  -- not in your binder.

19          THE COURT:  Thank you.

20          MR. ROBINSON:  Sure, Your Honor.

21       (Participants confer)

22       (Pause in proceedings)

23          THE COURT:  When I read Paragraph 4, I was

24   wondering:  What orders do I have in place?

25       (Laughter)

1          THE COURT:  So I have the cash management order in

2    place ...

3          MR. ROBINSON:  That's it, Your Honor.  We tried to

4    -- that's it.

5          THE COURT:  That's the only --

6          MR. ROBINSON:  Literally, there is no other relief

7    -- there was no other relief requested in the Chapter 11,

8    other than the interim and now final cash management.

9          THE COURT:  Okay.

10          MR. ROBINSON:  And the interim cash management, as

11    you may recall, it was simply to pay -- to set up the bank

12    account, so we could make the one post-petition payroll

13    happen through that account.

14          THE COURT:  Okay.  Well, then, again, consistent

15    with the colloquy we had on the previous motion, that this is

16    not, in any way -- the entry of this order would not, in any

17    way, be inconsistent with what is happening in the Canadian

18    proceedings or the Canadian cash management motion or

19    approval in front of the Canadian Judge, I will sign this

20    order.

21          MR. ROBINSON:  Thank you, Your Honor.

22          THE COURT:  Okay.  That order is signed.

23          MR. ROBINSON:  Your Honor, thank you.  And with the

24    entry of that order, we have no further matters on today's

25    agenda, and I have nothing further for the Court, unless your

1      court has -- Your Honor has any questions.

2              THE COURT:  I have no questions.  We're adjourned.

3              MR. ROBINSON:  Your Honor, thank you for your time

4      today.

5              THE COURT:  You're welcome.

6              MR. ROBINSON:  Thank you.

7              MR. HACKMAN:  Thank you, Your Honor.

8          (Proceedings concluded at 2:20 p.m.)

9                              *****

1                           CERTIFICATION

2            I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8

9

10   _____        July 1, 2020

11   Coleen Rand, AAERT Cert. No. 341

12   Certified Court Transcriptionist

13   For Reliable